## BEFORE THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DIANA JACSKON-SPELLS )
2352 Woodberry Drive )
Bryans Road, Maryland 20616 )
)
    Plaintiff, )
) Civil Action No.
v. )
)
DONALD H. RUMSFELD, )
(in his official capacity) )
Secretary, U.S. Department of Defense )
1000 Defense Pentagon )
Washington, D.C. 20301-1000 )
)
    Defendant. )
_____ )

## COMPLAINT FOR RELIEF FROM
## DISCRIMINATION ON THE BASIS OF RACE AND SEX

### I. NATURE OF CLAIM

1.    This is an action alleging violations of Title VII of the Civil Rights Act of 1964,

as amended, 42 U.S.C. § 2000e, *et seq.*

2.    Plaintiff Diana Jackson-Spells suffered discrimination in violation of Title VII

when the Defendant subjected her to disparate treatment based upon her race and sex by denying

her a position at the same pay grade as her male predecessors, by denying her training and by

transferring her duties to a lower-graded white male. At the same time, Defendant created a

hostile work environment for Plaintiff on the basis of her race and sex and her protected EEO

activity. Defendant also discriminated against Plaintiff by taking adverse action against her in

retaliation for her protected EEO activity. Plaintiff seeks declaratory and injunctive relief,

compensatory damages and attorney fees and costs as provided by Title VII.

## II. JURISDICTION

3.     This civil action is brought pursuant to 42 U.S.C. § 2000e-16(c).  This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 & 1343.  Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(e).

## III. DESCRIPTION OF THE PARTIES

4.     Plaintiff Diana Jackson-Spells is an African-American woman residing in Bryans Road, Maryland.  At all times relevant to this complaint, Plaintiff was employed by Defendant Department of Defense, Defense Logistics Agency ("DLA"), Defense Automated Printing Services ("DAPS").

5.     Defendant Donald Rumsfeld, as the Secretary of the Department of Defense, is sued in his official capacity as the head of the United States Department of Defense ("DoD" or "Defendant").  DoD is the federal government department of which DLA is a subordinate agency that includes DAPS.  Defendant DoD is responsible for promulgating regulations and overseeing the DLA Equal Employment Opportunity Office and for insuring that the DLA complies with all applicable employment discrimination laws and regulations.

## IV. STATEMENT OF FACTS

7.     Plaintiff Diana Jackson-Spells, an African-American woman, began working for the federal government in 1974 and the Department of Defense, Defense Automated Printing Service in 1977.  On December 12, 1993, the Plaintiff was promoted to a grade GS-11 position, Supervisory General Supply Specialist.  Plaintiff's two male predecessors in the Supervisory General Supply Specialist position, William Jackson and John Matera, had both been classified

2

at the grade GS-12 level

8. When the Plaintiff asked about this discrepency in classification, her supervisor, Michael Sadagursky (white, male) informed her that she would have to perform contracting duties in order to be a GS-12. He stated this despite the fact that her immediate predecessor, Mr. Matera, had not performed contracting duties and had been classified as a GS-12.

9. Plaintiff began performing contracting duties in 1996 when Mr. Sadagursky appointed her as the contracting specialist for the area. In light of Mr. Sadagursky's earlier promise to promote or reclassify her upon the accretion of contracting duties, Plaintiff requested a desk audit which was performed on her position in August 1996. The desk audit found Plaintiff's duties within the GS-11 range, so that she was not reclassified or promoted to the GS-12 position at the time.

10. At the time he assigned Plaintiff the additional contracting duties, Mr. Sadagursky refused to authorize Plaintiff to take the training required to perform the contracting duties. In 1996, Mr. Sadagursky denied her request stating that she could not be spared from the office for three (3) weeks the duration of the course. In 1997, despite the fact that DAPS Headquarters had identified Plaintiff as needing to take a training course on an accounting system, Mr. Sadagursky attempted to prevent Plaintiff from attending in order to send Raymond Staniewski (white, male) instead. Only upon Plaintiff's strenuous objections to sending Mr. Staniewski and not sending herself did Mr. Sadagursky relent and allow her to attend.

11. In 1998, Mr. Sadagursky refused to authorize training for Plaintiff on government impact credit cards, despite the fact she was responsible for using and managing the impact credit cards. Plaintiff was never allowed to attend this training; instead, her subordinate John Barnes

3

(African American, male) and Mr. Staniewski both received the impact credit card training.

12.     In March 1999, Mr. Sadagursky withdrew authorization for Plaintiff to attend another training course in the DWAS accounting system and instead sent David Verner (white male).

13.     In 1999, Plaintiff was finally scheduled to take the contracting training she had requested in 1996. The course was to be held starting in June 1999. On or about May 6, 1999, Mr. Sadagursky informed Plaintiff that those training sessions had been cancelled. Plaintiff called Elizabeth ("Betsy") Richardson, the DAPS person in charge of arranging training, and was informed that the training sessions had not been cancelled, but that no DAPS employees from her area would be attending.

14.     Mr. Sadagursky transferred from his position at DAPS Northern Virginia on or about May 7, 1999, to a position with the DAPS Commercial Activity Program at Ft. Belvior, Virginia. On or about May 9, 1999, Gilbert Kruemmel (white male) succeeded Mr. Sadagursky as the head of DAPS Northern Virginia, which was part of DAPS Washington.

15.     On or about May 12, 1999, Mr. Kruemmel informed Plaintiff that she would not be attending the training in June 1999. He stated that Larry Boniface (white male), a manager classified as a grade GS-12, would be attending, but not Mr. Staniewski. Later that day, Plaintiff learned through an electronic mail that Mr. Staniewski would be attending the June 1999 training. Mr. Staniewski took the training in June 1999 and passed. Plaintiff was not allowed to attend the class until October 1999.

16.     Mr. Staniewski was a similarly-situated employee outside of Plaintiff's protected class. Mr. Staniewski occupied the same level as Plaintiff on the Agency Organizational Chart.

4

In May 1999, Mr. Kruemmel directly supervised both Mr. Staniewski and Plaintiff Spells. Their duties were interchangeable. Mr. Staniewski was assigned some of Plaintiff's duties, namely the copier program duties and contracting duties, while, at the same time, Plaintiff was assigned Mr. Staniewski's procurement duties.

17.    On June 25, 1999, forty-four (44) days after learning that she had been denied training that Mr. Staniewski would be attending, Plaintiff initiated contact with a DLA EEO counselor. She claimed that she was discriminated against based on her race and sex when she was denied training during the period of 1996 through 1999. The claim was docketed as DLA Case No. Z2-00-004.

18.    Plaintiff's duties increased during the period of 1996 through 1999. She received a contracting warrant for $5,000.00 and then for $25,000 in December 1997. On March 15, 1999, DAPS Headquarters executed a Performance Management Review ("PMR") of Plaintiff's local office and gave the office a passing rating. When the PMR Team asked Plaintiff if she had any recommendations, she recommended more training and promotions for herself and her staff. The PMR Team agreed with Plaintiff's recommendations and informed her that they intended to document them in their report.

19.    The next day, March 16, 1999, Plaintiff debriefed Mr. Sadagursky regarding the PMR review and her recommendations and specifically requested the promotions and additional training. Mr. Sadagursky told Plaintiff that he would review the contracting grading structure of the DLA to see what he could do; however, after that day, he never responded to her request for a promotion.

20.    In June 1999, Plaintiff included in her complaint of discrimination a claim that

5

she was not promoted to the GS-12 grade level because of her race and sex. The claim was investigated at the informal stage, but dismissed as untimely by the Agency at the formal complaint stage due to a confusion over the dates.

21.    On or about February 22, 2001, Plaintiff filed a motion with the EEOC to reinstate the claim that she was discriminated against when she was denied a promotion to the grade level GS-12 arguing that her March 1999 request for promotion, for which she never received a reply, made her June 25, 1999, complaint timely. Her claim was reinstated by the EEOC on September 8, 2003.

22.    In 2000 after a reduction-in-force (RIF), Plaintiff became responsible for the delivery division, which included supervision for four delivery drivers. The number of sites for which she was responsible to supply increased from ten (10) to seventeen (17), virtually a 75% increase in her work load. At the same time, the volume and variety of demands from each of the sites remained constant and did not diminish.

23.    Plaintiff once again requested a reclassification of her position on January 3, 2001, from a grade GS-11 to a grade GS-12. Along with the request, she submitted a description of her current duties and the grade GS-11 duties. To have been granted the re-classification to the grade GS-12 would have made her the highest-graded woman in DAPS Washington Operations.

24.    Mr. Kruemmel denied Plaintiff's request for reclassification on January 4, 2001. Mr. Kruemmel justified his decision by stating that "DLA HR personnel indicated to me that the complainant's position did not warrant a GS-11 grade and that I should consider downgrading the position." However, Mary Morris, the DLA HR classifier with whom Mr. Kruemmel spoke,

contradicted his statements.  In a signed, written statement, Ms. Morris claimed that Mr.

Kruemmel stated to her that Plaintiff's position description was correct and "if rewritten the

organization structure may not support the supervisory GS-11 level."  As such, Ms. Morris never

assessed Plaintiff's duties as they existed after June 2000 in the context of reclassifying her

position.

25.     Plaintiff received Mr. Kruemmel's reply on January 16, 2001, almost two weeks

later, and filed her second discrimination complaint on February 21, 2001, alleging that she

suffered discrimination when she was denied a promotion based on her race, sex and prior EEO

activity.  That claim was docketed as DLA Case No. Z6-01-001.

26.     After having performed contracting duties and having requested training for said

contracting duties since 1996, Plaintiff Spells finally started to receive the necessary formal

training in October 1999.  The training course, CON101, was held in Richmond, Virginia, and

lasted one month.  Plaintiff did not stay in Richmond over the weekends for that month, but

instead returned to the Washington, D.C. area to attend to family and work matters.  Particularly,

Plaintiff's then-teenage son was home alone during the month because Plaintiff's husband was

also traveling, so Plaintiff made extra efforts telephoning and returning home to supervise her

son. Her supervisor, Mr. Kruemmel, knew that she had returned to the Washington, D.C. area

because, during the month, she submitted work to him that she had done on the weekends.

27.     Plaintiff did not pass that training course and Mr. Kruemmel was informed that

she did not pass in November 1999.  Nevertheless, despite having failed the necessary

contracting course, Plaintiff continued to perform her contracting duties until November 9, 2000.

28.     On November 9, 2000, Mr. Kruemmel sent an electronic mail to Plaintiff and her

7

subordinate, Mr. Barnes, informing them that, "[s]tarting immediately, [Mr.] Staniewski will have to sign all contracts.  He is the only individual in DAPS Washington with a contracting warrant."  Mr. Kruemmel's statement was false because he knew that Mr. Barnes, an African-American male, also had the same contracting warrant as Mr. Staniewski.  With that, Mr. Kruemmel deprived Plaintiff of her duties and assigned them not to her African-American subordinate, in which instance the duties would have remained in Plaintiff's office and under her supervision, but instead, to a similarly-situated white male.

29.    In the complaint of discrimination filed February 21, 2001, DLA Case No. Z6-01-001, Plaintiff included the claim that Defendant discriminated against her on the basis of her race, sex and prior EEO activity by depriving her of her contracting duties.

30.    In May 2001, Mr. Kruemmel ceased communication with Plaintiff and placed her under the direct supervision of John Fitzgerald (white, male).  Prior to that time, Plaintiff had communicated directly with Mr. Kruemmel and had little to no contact with Mr. Fitzgerald.  At the time, Mr. Kruemmel had appointed Mr. Fitzgerald "second in command" for all of the DAPS Washington sites; however, Mr. Kruemmel only placed two Fern Street supervisors under Mr. Fitzgerald's direct supervision, both of whom happened to be African-American, Plaintiff and James Turner (African American, male).  Notably, Mr. Kruemmel did not place Mr. Staniewski under Mr. Fitzgerald's supervision.

31.    Mr. Fitzgerald made numerous insulting and derogatory remarks to and about African-American employees.  He told Plaintiff that Mr. Barnes was not intelligent enough to perform his contracting duties.  Mr. Fitzgerald also told Mr. Turner he was not smart enough to instruct one of Mr. Turner's subordinates.  Mr. Turner swore that Mr. Fitzgerald also made

8

derogatory comments about other African Americans, Messrs. Freeman, Mansfield and Barnes.

32.     In April or May 2001, Mr. Kruemmel also removed one of Plaintiff's subordinates and assigned him to work for Mr. Staniewski.  Arthur Emerson (African American, male) was transferred out of Plaintiff's office, where he had worked since 1994, and began working in Mr. Staniewski's office.

33.     Instead of replacing Mr. Emerson, Mr. Kruemmel directed Plaintiff to complete Mr. Emerson's duties.  Because Mr. Emerson was a Supply Technician grade GS-07 and performed duties appropriate to that position, specifically approval of invoices, Plaintiff was forced to assume lower-graded duties.  Further, Mr. Fitzgerald required Plaintiff to perform these duties even after he became aware that neither she nor anyone remaining in her office was authorized to perform Mr. Emerson's duties

34.     In May 2001, Plaintiff added a claim to her complaint docketed as DLA Case No. Z6-01-001 alleging that Defendant subjected her to a hostile work environment after she filed the February complaint.  The claim was investigated along with the rest of the complaint.

35.     After Plaintiff had attended the CON101 training course in October 1999, she had worked with Irene Fletcher (white, female), then Accounting Technician who processed travel vouchers in the DAPS, Fern Street office, to complete her travel vouchers.  Plaintiff filed her travel voucher from the CON 101 course on November 18, 1999, after Ms. Fletcher reviewed and approved of its contents.  Ms. Fletcher emphatically testified that Plaintiff worked to accurately and honestly complete her travel vouchers.

36.     In late June 2000 after receiving the reimbursement for the travel voucher, Plaintiff contacted Defense Finance and Accounting Service ("DFAS") about a question

9

regarding reimbursement of hotel tax. DFAS informed Plaintiff that the hotel tax had been reimbursed, but that Plaintiff had reported unauthorized telephone charges on the voucher. Plaintiff explained that she had not know that the telephone charges were not authorized and, indeed, Ms. Fletcher confirmed that she had informed Plaintiff that the charges were authorized. Nonetheless, DFAS informed Plaintiff that she would have to repay the amount of the telephone charges.

37.    In November 2000, Plaintiff was interviewed by Patrick Ryan, an investigator from the Defense Logistics Agency Criminal Investigations Division ("DCIA"), first about anonymous allegations against the truck drivers Plaintiff supervised, but then about her travel voucher. Despite the fact Mr. Ryan gave Plaintiff no opportunity to review her records and refresh her recollection before he questioned her about the travel details of a trip she took more than one year before, she cooperated and answered his questions to the best of her recollection. Investigator Ryan completed his investigation and submitted a report in April 2001.

38.    In March 2001, Plaintiff received a notice from DFAS stating that she had been overpaid on her reimbursement for travel expenses. The DFAS notice specifically stated that the overpayment was due to DFAS's computational error or typographical error, but that "[e]ven though the overpayment was caused by our office, payment of this debt is due within 30 days from the date of this letter." Plaintiff repaid the money.

39.    Almost five months after the completion of the DLA investigation, on August 24, 2001, Plaintiff received a notice of proposed suspension from Mr. Fitzgerald charging her with failing to submit an accurate travel voucher and providing inaccurate information to an agency investigator. Mr. Fitzgerald drafted the proposal to suspend approximately one month after he

10

provided an signed and sworn affidavit in response to Plaintiff's February 2001 discrimination

complaint. As part of that affidavit, Mr. Fitzgerald stated that he had reviewed Plaintiff's

affidavit dated July 17, 2001, in which she accused him of making racist and derogatory remarks

about African Americans. Yet in a later affidavit responding to Plaintiff's claims that he

retaliated against her by proposing the suspension, Mr. Fitzgerald swore that "I had heard

unofficial comments regarding Ms. Spells and an EEO case, but I have never heard or been

aware of the specifics of such a case, or even if there really was one."

40.    On or about September 7, 2001, Plaintiff submitted her response to the proposed

suspension to Mr. Kruemmel. She presented evidence and arguments supporting her claim that

she was not guilty of the charges and that, at worst, she made two honest mistakes in completing

her travel voucher. Additionally, Plaintiff reminded Mr. Kruemmel that the proposal of

suspension was based on actions that occurred more than two years previously, but only one

month after Mr. Fitzgerald had submitted an affidavit in her EEO case, and suggested that Mr.

Fitzgerald proposed the suspension in retaliation for her EEO activity. Further, Plaintiff

requested that Mr. Kruemmel recuse himself from the position of deciding official in her

suspension because he had also been named a responsible agency management official in her

prior EEO complaint in which she alleged, *inter alia*, that he retaliated against her because of her

prior EEO activity.

41.    Mr. Kruemmel never responded to Plaintiff's request that he recuse himself from

acting as the deciding official. Instead, on November 2, 2001, he issued a decision sustaining the

charges and suspended Plaintiff for five (5) days.

42.    Mr. Kruemmel stated that DLA HR recommended a fourteen day suspension, but

that he reduced it to five days. The DLA HR employee with whom he consulted, Kathy Jenkins, stated she did not tell Mr. Kruemmel that he had to suspend Plaintiff and did not recommend a fourteen-day suspension. Instead, Ms. Jenkins stated she told Mr. Kruemmel what the minimum and maximum penalties were and told him the choice of action to take was his.

43.    The DLA table of offenses and penalties lists the penalty for a first-time offense of misrepresentation, falsification or concealment of a material fact in connection with an official document as reprimand to removal. The penalty is the same for withholding material facts in connection with matters under official investigation or inquiry, specifically reprimand to removal. Accordingly, assuming, *arguendo*, that Mr. Kruemmel was justified in sustaining the charges brought against Plaintiff, Mr. Kruemmel could have easily reprimanded her.

44.    On November 20, 2001, Plaintiff filed a complaint of discrimination claiming that, in retaliation for prior EEO activity, Defendant initiated an investigation into her travel voucher and suspended her for five (5) days. That complaint was docketed as DLA Case No. Z6-02-002.

45.    All of Plaintiff's claims were investigated by Defendant and reports of investigation were prepared. Plaintiff requested a hearing before the EEOC on all of her claims. On July 26, 2004, EEOC Administrative Judge Gladys O. Collazo, *sua sponte*, issued a Notice of Proposed Summary Judgement, ordering Plaintiff to demonstrate why her claims should not be dismissed without a hearing. Plaintiff timely submitted her response; nevertheless, AJ Collazo dismissed Plaintiff's claims without a hearing. Defendant issued a final decision adopting and implementing the AJ's decision finding no discrimination on October 29, 2004.

46.    Plaintiff timely appealed the decision to the EEOC Office of Federal Operations

12

on November 30, 2004.  In her brief, she argued that the AJ failed to apply the correct legal

standards and weighed evidence and made credibility determinations, which violated EEOC legal

standards.  She also argued that the AJ dismissed one of her claims on the merits, the claim that

Defendant retaliated against her by suspending her, without giving her an opportunity to present

evidence and arguments on the merits and one claim on the basis of untimeliness, again without

allowing Plaintiff to respond.

    47.    In a decision issued March 21, 2006, the EEOC denied Plaintiff's appeal.  <u>See</u>

Attachment A.  From that appeal, this law suit is filed.

**COUNT I: DISCRIMINATION IN VIOLATION OF
TITLE VII OF THE CIVIL RIGHTS ACT, 42 U.S.C. § 2000e-16
(Disparate Treatment Based on Sex and Race)**

    48.    Plaintiff hereby reasserts and reincorporates the allegations listed in Paragraphs 1-

47 above as if fully set forth below.

    49.    Defendant treated Plaintiff disparately because of her race and sex when it denied

Plaintiff reclassification to a higher grade, the grade at which her male predecessors performed

the same duties, and denied her the same training granted to similarly-situated male employees.

    50.    As a direct and proximate result of Defendant's discriminatory actions, Plaintiff

Spells has suffered loss of income and other employment benefits and damage to her professional

reputation.  Furthermore, as a direct and proximate cause of the Defendant's discrimination,

Plaintiff has endured mental and physical pain and suffering, embarrassment, humiliation and

mental anguish.

13

## COUNT II: DISCRIMINATION IN IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT, 42 U.S.C. § 2000e-16
### (Hostile Work Environment Based on Sex, Race and Protected EEO Activity)

51.    Plaintiff hereby reasserts and reincorporates the allegations listed in Paragraphs 1-50 above as if fully set forth below.

52.    Defendant discriminated against Plaintiff by creating a hostile work environment based on her race, sex and protected EEO activity by transferring her to a supervisor who had demonstrated racial bias against African Americans, by removing employees from her supervision and assigning her lower-graded work.  These actions were sufficiently severe and pervasive as to negatively alter the terms and conditions under which Plaintiff worked.

53.    As a direct and proximate result of Defendant's discriminatory actions, Plaintiff Spells has suffered loss of income and other employment benefits and damage to her professional reputation.  Furthermore, as a direct and proximate cause of the Defendant's discrimination, Plaintiff has endured mental and physical pain and suffering, embarrassment, humiliation and mental anguish.

## COUNT III:  DISCRIMINATION IN IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT, 42 U.S.C. § 2000e-16
### (Retaliation for Prior Protected EEO Activity)

54.    Plaintiff hereby reasserts and reincorporates the allegations listed in Paragraphs 1-53 above as if fully set forth below.

55.    Defendant discriminated against Plaintiff by suspending Plaintiff for five (5) days in retaliation for Plaintiff's protected EEO activity, namely filing complaints of discrimination.

56.    As a direct and proximate result of Defendant's discriminatory actions, Plaintiff Spells has suffered loss of income and other employment benefits and damage to her professional

reputation. Furthermore, as a direct and proximate cause of the Defendant's discrimination, Plaintiff has endured mental and physical pain and suffering, embarrassment, humiliation and mental anguish.

## V.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court:

a)    Assign this case for trial at the earliest practicable date;

b)    Enter declaratory judgment against Defendant in favor of Plaintiff finding Defendant's conduct to be in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16;

c)    Award Plaintiff back pay and compensatory damages for the pain and suffering the Plaintiff experienced as a result of the Defendant's discriminatory actions;

d)    Award Plaintiff her reasonable attorneys fees and costs for this action; and

e)    Award Plaintiff all other legal or equitable relief to which she may be entitled.

## VII.  REQUEST FOR JURY TRIAL

Plaintiff hereby requests a jury trial.

Respectfully Submitted,

Leslie Deak [PA0009]
Law Offices of Leslie Deak
1200 G Street, N.W.
Suite 800, No. 099
Washington, D.C.  20005
Tel.:    (512) 322-3911
Fax:    (512) 322-3910

ATTORNEY FOR PLAINTIFF

15

# JACKSON-SPELLS v. RUMSFELD

# ATTACHMENT A



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P. O. Box 19848**
**Washington, D.C. 20036**

Diana Jackson-Spells,
Complainant,

v.

Donald H. Rumsfeld,
Secretary,
Department of Defense,
(Defense Security Service),
Agency.

Appeal No. 01A51240

Agency Nos. Z2-00-004, Z6-01-001, and Z6-02-002
Hearing No. 120-A1-4009X

DECISION

Pursuant to 29 C.F.R. § 1614.405, the Equal Employment Opportunity Commission (EEOC or Commission) accepts the complainant's appeal from the agency's October 29, 2004 final order in the above-entitled matter. The complainant filed three complaints that were separately investigated and later consolidated by an EEOC Administrative Judge (AJ). She claimed that the agency discriminated against her based on her race, national origin and color (African-American/black), sex (female), and reprisal for prior protected EEO activity under Title VII of the Civil Rights Act of 1964, as applicable, when:

1. she was denied training courses from 1996 to May 1999,[1]
2. she was not promoted to GS-12 following her March 1999 request for an upgrade of her position.
3. her contracting work was reassigned to another employee on November 9, 2000,
4. she was denied the opportunity to apply for a Procurement Analyst position shortly after November 9, 2000,
5. she was denied job reclassification/promotion in January 2001 after a requested desk audit,
6. she was subject to a hostile work environment,

---

[1] The decision of EEOC AJ, which was fully implemented by the agency, listed three separate incidents, the most recent in May 1999. On appeal, the complainant correctly contends that claim 1 includes an additional training class prior to May 1999.

2                                                01A51240

7.  she was subject to a criminal investigation (she was interviewed twice in November 2000 and the report was issued on April 4, 2001), and
8.  she was suspended for five days effective November 14, 2001.

With regard to claims 1 and 2, the complainant sought EEO counseling on June 25, 1999. With regard to claims 3 and 4, the complainant sought EEO counseling on February 21, 2001. With regard to claim 7, the complainant sought EEO counseling on November 20, 2001. The AJ's decision dismissed claims 1, 2, 3, 4 and 7 on the grounds that the complainant failed to timely seek EEO counseling within the 45 calendar day time limit. We affirm this dismissal for all but the last incident of training in claim 1.

An aggrieved person must seek EEO counseling within 45 days of the date of the alleged discriminatory action, or in the case of a personnel action, within 45 days of the effective date of the action. 29 C.F.R. § 1614.105(a)(1). The time limit to seek EEO counseling shall be extended when an individual shows she did not know and reasonably should not have known that the discriminatory action or personnel action occurred. The Commission has adopted a "reasonable suspicion" standard (as opposed to a "supportive facts" standard) to determine when the forty-five (45) day limitation period is triggered. *See Howard v. Department of the Navy*, EEOC Request No. 05970852 (February 11, 1999). Thus, the time limitation is not triggered until a complainant reasonably suspects discrimination, but before all the facts that support a charge of discrimination have become apparent.

With regard to the last incident of claim 1, the complainant argues that she did not have a reasonable suspicion of discrimination until May 12, 1999, when she learned that one or two white employees were going to the training, but not her. However, she states that on May 7, 1999, she learned that the class was not cancelled, as she had been told. We need not decide whether this incident is timely because it fails to state a claim. The record shows that this matter actually concerns the training being delayed, as the complainant was rescheduled to attend the training in October 1999. She has not shown how she was harmed by the delay, and accordingly this matter is dismissed under 29 C.F.R. § 1614.107(a)(1) for failure to state a claim.[2] *See Diaz v. Department of the Air Force*, EEOC Request No. 05931049 (April 21, 1994).

With regard to claims 5, 6[3] and 8, after a review of the record in its entirety, including consideration of all statements submitted on appeal, it is the decision of the EEOC to affirm the agency's final order, because the AJ's issuance of a decision without a hearing was appropriate and a preponderance of the record evidence does not establish that discrimination occurred.

_____

[2] In fact, the complainant failed the training.

[3] The decision of the AJ separated out the hostile work environment issue into two numbered claims. On appeal, the complainant contends that her hostile work environment claim is one claim and contains at least four sets of facts, not two. Even viewing it as one claim, the AJ properly issued a decision without a hearing on this matter finding no discrimination.

3                                                              01A51240

Because the AJ's decision did not explain with specificity its reasoning regarding claim 8, we will do so here. The agency initially proposed suspending the complainant for 10 days under charges that she both failed to submit an accurate travel voucher and to give accurate information to a criminal investigator regarding this. The charges followed the findings in an agency criminal investigative report. In response to the proposed suspension, the complainant persuasively rebutted some of the conclusions of the criminal investigative report. Thereafter, the agency suspended the complainant. The suspension letter accepted part of the complainant's explanation, and reduced the proposed suspension to five days. In determining whether there was discrimination, the question is not whether the criminal investigative report reached the correct conclusions. Rather, the question is whether the people who had input into suspending the complainant unfairly relied on the report or disparately treated the complainant. The complainant failed to show such reliance was discriminatory or retaliatory. Given the charges and the rebuttal, the complainant failed to show that the deciding official unfairly relied on the report to decide a suspension was warranted. Moreover, the complainant did not show that she was disparately treated.

Accordingly, the final order, which implemented the AJ's decision to dismiss part of the complainant's complaints, and to hold no hearing and find no discrimination on the remaining portion is affirmed.

## STATEMENT OF RIGHTS - ON APPEAL

## RECONSIDERATION (M0701)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:

  1.   The appellate decision involved a clearly erroneous interpretation of material fact or law; or

  2.   The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision or **within twenty (20) calendar days** of receipt of another party's timely request for reconsideration. *See* 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. *See* 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

4                                        01A51240

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. *See* 29 C.F.R. § 1614.604(c).

<u>COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION</u> (S0900)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

<u>RIGHT TO REQUEST COUNSEL</u> (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

*Carlton M. Hadden*
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Carlton M. Hadden, Director
Office of Federal Operations

MAR 2 1 2006
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Date

5                                    01A51240

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.** I certify that this decision was mailed to the following recipients on the date below:

Diana Jackson-Spells
3407 B White Fir Court
Waldorf, MD  20602

Leslie Deck
Deats & Levy, P.C.
1204 San Antonio St., Suite 203
Austin, TX  78701

*(Alternate address)*
Leslie Deck
Deats & Levy, P.C.
1200 G Street, N.W.
Suite 800, No. 099
Washington, D.C.  20005

Thomas A. Beber, Director, Ofc. of DM (EEO)
Defense Security Service
1340 Braddock Pl.
Alexandria, VA  22314-1651

MAR 2 1 2006
_____
Date

_____
Equal Opportunity Assistant